# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CEC DEVELOPMENT BORROWER, LLC, | ) | Case No. 20-14573 MER |
| | ) | Chapter 11 |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CEC RENEWABLE ASSETS, LLC, | ) | Case No. 20-14574 JGR |
| | ) | Chapter 11 |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CEC RENEWABLE ASSETS | ) | Case No. 20-14575 TBM |
| DEVELOPMENT, LLC, | ) | Chapter 11 |
| | ) | |
| | ) | *Jointly Administered Under* |
| Debtor. | ) | *Case No. 20-_____ ___* |
| | ) | |

## DEBTORS' JOINT PREPACKAGED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WADSWORTH GARBER WARNER CONRARDY, P.C.
David V. Wadsworth, #32066
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, CO 80120
(303) 296-1999

**Proposed Attorneys for Debtor in Possession**

Dated: July 2, 2020

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
      TIME, GOVERNING LAW, AND OTHER REFERENCES ........................................ 1

   1.1  Defined Terms ............................................................................................................. 1

   1.2  Rules of Interpretation ................................................................................................ 9

   1.3  Computation of Time ................................................................................................ 10

   1.4  Governing Law ......................................................................................................... 10

   1.5  Reference to Monetary Figures ................................................................................ 10

   1.6  Controlling Document .............................................................................................. 10

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ............................................. 11

   2.1  Administrative Claims .............................................................................................. 11

      2.1.1  General Administrative Claims ...................................................................... 11

      2.1.2  Professional Fee Claims ................................................................................. 11

   2.2  DIP Facility Claim ................................................................................................... 12

   2.3  Priority Tax Claims .................................................................................................. 12

   2.4  Statutory Fees ........................................................................................................... 13

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS .. 13

   3.1  Substantive Consolidation of the Debtor Estates ..................................................... 13

   3.2  Classification of Claims and Interests ...................................................................... 13

   3.3  Treatment of Claims and Interests ........................................................................... 14

   3.4  Controversy Concerning Impairment ....................................................................... 16

   3.5  Elimination of Vacant Classes ................................................................................. 17

   3.6  Voting Classes; Presumed Acceptance by Non-Voting Classes ............................... 17

   3.7  Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ............. 17

ARTICLE IV ASSET SALE TO CED BTM .......................................................................... 17

   4.1  Sale of CEC DB Assets to CED BTM ..................................................................... 17

   4.2  No Liabilities Other Than Assumed Liabilities ....................................................... 18

   4.3  No Successor Liability .............................................................................................. 18

   4.4  Break-up Fee ............................................................................................................ 18

   4.5  No Interference; Cooperation ................................................................................... 19

   4.6  Conditions Precedent to Closing .............................................................................. 19

ARTICLE V PROVISIONS FOR IMPLEMENTATION OF THE PLAN ............................. 19

   5.1  Substantive Consolidation ........................................................................................ 19

   5.2  General Settlement of Claims and Interests ............................................................. 20

   5.3  Authority to Effectuate Plan ..................................................................................... 20

| | | |
|---|---|---|
| 5.4 | Vesting of Assets in the Liquidating Debtor | 20 |
| 5.5 | Corporate Action; Dissolution | 21 |
| 5.6 | Closing of the Chapter 11 Cases | 21 |
| 5.7 | Winding Down of Affairs | 21 |
| 5.8 | Section 1146(a) Exemption | 21 |
| 5.9 | Waiver and Release of Causes of Action | 22 |
| 5.10 | Release of Avoidance Actions | 22 |
| ARTICLE VI | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| 6.1 | Assumption/Assignment/Rejection of Executory Contracts and Unexpired Leases | 22 |
| 6.2 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 23 |
| 6.3 | Rejection Damages Claims | 23 |
| 6.4 | Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases | 24 |
| 6.5 | Intercompany Contracts; Contracts and Leases After the Petition Date | 24 |
| 6.6 | Reservation of Rights | 24 |
| 6.7 | Nonoccurrence of Effective Date | 24 |
| ARTICLE VII | PROVISIONS GOVERNING DISTRIBUTIONS | 25 |
| 7.1 | Timing and Calculation of Amounts to be Distributed | 25 |
| 7.2 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 25 |
| 7.2.1 | Delivery of Distributions in General | 25 |
| 7.2.2 | Minimum Distributions | 25 |
| 7.2.3 | Undeliverable Distributions and Unclaimed Property | 25 |
| 7.3 | Compliance with Tax Requirements/Allocations | 26 |
| ARTICLE VIII | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS | 26 |
| 8.1 | Prosecution of Objections to Claims | 26 |
| 8.2 | No Filing of Proofs of Claim | 27 |
| 8.3 | Procedures Regarding Disputed Claims | 27 |
| 8.4 | Special Rules for Distributions to Holders of Disputed Claims | 27 |
| ARTICLE IX | EFFECT OF CONFIRMATION OF THE PLAN | 27 |
| 9.1 | Compromise and Settlement of Claims, Interests, and Controversies | 27 |
| 9.2 | Releases by the Debtors | 28 |
| 9.3 | Releases by Holders of Claim and Interests | 29 |
| 9.4 | Exculpation | 30 |
| 9.5 | Injunction | 31 |
| ARTICLE X | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 32 |
| 10.1 | Conditions Precedent to the Effective Date | 32 |

10.2    Waiver of Conditions Precedent ........................................................................ 34

10.3    Effect of Non-Occurrence of Conditions to Consummation ........................... 34

10.4    Substantial Consummation ............................................................................. 34

ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..................... 34

11.1    Modification of Plan ....................................................................................... 34

11.2    Effect of Confirmation on Modifications ....................................................... 35

11.3    Revocation or Withdrawal of Plan ................................................................ 35

ARTICLE XII RETENTION OF JURISDICTION ........................................................................ 35

ARTICLE XIII MISCELLANEOUS PROVISIONS ...................................................................... 37

13.1    Immediate Binding Effect ............................................................................... 37

13.2    Additional Documents .................................................................................... 37

13.3    Reservation of Rights ...................................................................................... 37

13.4    Successors and Assigns ................................................................................... 38

13.5    Service of Documents ..................................................................................... 38

13.6    Term of Injunctions or Stays .......................................................................... 38

13.7    Entire Agreement ........................................................................................... 39

13.8    Non-Severability ............................................................................................ 39

13.9    Votes Solicited in Good Faith ........................................................................ 39

13.10    Dissolution of the Committee ........................................................................ 39

13.11    Closing of Chapter 11 Cases .......................................................................... 40

13.12    Waiver or Estoppel ......................................................................................... 40

## **INTRODUCTION**

This Plan of Liquidation under chapter 11 of Title 11 of the United States Code proposes to pay creditors of CEC Development Borrower, LLC, CEC Renewable Assets Development, LLC, and CEC Renewable Assets, LLC from the proceeds of a sale of the assets of CEC DB to CED BTM.

The Plan provides for three classes of secured claims, two classes of unsecured claims, and two classes of equity interests.  This Plan also provides for the payment of the DIP Facility Claim and unclassified administrative and priority tax claims.

All creditors and equity security holders should refer to Articles III and V of this Plan for information regarding the precise treatment of their claims.  Reference is also made to the accompanying *Disclosure Statement for the Prepackaged Joint Chapter 11 Plan of Liquidation of CEC Development Borrower, LLC, CEC Renewable Assets Development, LLC, and CEC Renewable Assets, LLC* for a discussion of the Debtors' history, businesses, properties and operations, projections, risk factors, a summary and analysis of the Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## **ARTICLE I**

## **DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

### **1.1   Defined Terms**

1. **Acquired Interests.**  CEC DB's membership interests in Project Companies acquired by CED BTM pursuant to the CED MIPA.

2. **Administrative Claim**. A Claim, other than DIP Facility Claims, incurred by the Debtors on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases entitled to priority under sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3. **Affiliate**.  An affiliate as defined in section 101(2) of the Bankruptcy Code.

4.     **Allowed**. With respect to any Claim or Interest: (a) a Claim or Interest as to which no objection has been filed and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Bar Date, if any, or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely filed; or (c) a Claim or Interest that is Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Liquidating Debtor, as applicable.

5.     **Avoidance Actions**. Any actions commenced, or that may be commenced, pursuant to Chapter 5 of the Bankruptcy Code.

6.     **Ballot**.  The ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

7.     **Bankruptcy Code**. Title 11 of the United States Code.

8.     **Bankruptcy Court**. The Bankruptcy Court unit of the United States District Court for the District of Colorado.

9.     **Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075, Title 28, United States Code.

10.     **Business Day**. Any day other than a Saturday, a Sunday, or any other day on which banking institutions in Denver, Colorado are required or authorized to close by law or executive order.

11.     **Cash**. Legal tender of the United States of America.

12.     **Causes of Action**.  Any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, choate or inchoate, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity,

including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

13. **CDB Loan**. That certain Development Loan Agreement, dated as of February 28, 2019 between CEC DB and NAI CEC Development Lender Inc. (as amended, supplemented, or otherwise modified from time to time) which was assigned to FCS Advisors, LLC d/b/a Brevet Capital Advisors.

14. **CEC**. Clean Energy Collective, LLC.

15. **CEC DB**. CEC Development Borrower, LLC.

16. **CEC Entities**. Collectively, (a) CEC; (b) CEC DB; (c) CEC RA; (d) CEC RAD; (e) Clean Energy Community HoldCo 1, LLC; (f) CEC Development, LLC; (g) Energy Equipment Limited; (h) Clean Energy Capital Fund I, LLC; (i) CEC Solar Fund 1, LLC; (j) Alburgh Solar 1, LLC; and (k) the Project Companies.

17. **CEC RA**. CEC Renewable Assets, LLC.

18. **CEC RAD**. CEC Renewable Assets Development, LLC.

19. **CED BTM**. CED BTM Development Solar, LLC.

20. **CED MIPA**. The Membership Interest Purchase Agreement by and between CEC DB and CED BTM dated July 1, 2020 and attached hereto as <u>Exhibit A</u>.

21. **Chapter 11 Cases**. When used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. When used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

22. **Claim**. Any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

23. **Claim Escrow Account**. An interest-bearing account funded by the Liquidating Debtor with the remaining MIPA Sale Proceeds, if any, after repayment of the DIP Facility Claim and Cash received postpetition.

24. **Class**. A category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

25. **Confirmation**. The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

3

26.     **Confirmation Date**. The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

27.     **Confirmation Hearing**. The hearing(a) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

28.     **Confirmation Order**. An order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement and Solicitation Materials.

29.     **Consummation**. The occurrence of the Effective Date.

30.     **Cure Claim**. A Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

31.     **Debtor Release**. The releases set forth in Section 9.2 of the Plan.

32.     **Debtors**. CEC Development Borrower, LLC; CEC Renewable Assets Dev, LLC; and CEC Renewable Assets, LLC.

33.     **Dev Lender**. FCS Advisors, LLC d/b/a Brevet Capital Advisors.

34.     **DIP Credit Agreement**. That certain debtor-in-possession credit agreement (as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms) to be entered into by the Debtors and the DIP Facility Lender.

35.     **DIP Facility**. That certain debtor-in-possession credit facility provided by the DIP Facility Lender on the terms of, and subject to the conditions set forth in, the DIP Credit Agreement.

36.     **DIP Facility Claim**. The Claim derived from or based upon the DIP Facility, including the Claim for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under or related to the DIP Facility, which shall include amounts owed under the Term Loan Facility (as defined in the DIP Credit Agreement) and the Roll-Up Facility (as defined in the DIP Credit Agreement) comprised of the roll-up of the amounts due under the Tranche B Loan and the CDB Loan.

37.     **DIP Facility Documents**. The DIP Credit Agreement, as applicable, and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Credit Agreement.

38.     **DIP Facility Lender**. FCS Advisors, LLC d/b/a Brevet Capital Advisors.

39.     **DIP Orders**.   Collectively, the interim order and final order entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility and pursuant to which the DIP Facility Lender has been granted a first priority Lien and security interest in all of the assets of the Debtors ahead of all other Liens and security interests, and has been granted a super priority administrative expense claim, senior to all other administrative expense claims, including any other super priority administrative expense claim.

40.     **Disallowed**.   When referring to a Claim or Interest, a Claim or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

41.     **Disclosure Statement**.   The *Disclosure Statement for the Prepackaged Joint Chapter 11 Plan of Liquidation of CEC Development Borrower, LLC, CEC Renewable Assets Dev, LLC, and CEC Renewable Assets, LLC*, as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

42.     **Disputed**. With respect to a Claim, (a) any such Claim to the extent neither Allowed or Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) to the extent the Debtors or any party in interest has interposed a timely objection before the deadlines imposed by the Confirmation Order, which objection has not been withdrawn or determined by a Final Order. To the extent only the Allowed amount of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claims.

43.     **Distribution**.   Any distribution made pursuant to the terms of the Plan.

44.     **Effective Date**. The date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the occurrence of the Effective Date set forth in Section 10.1 of the Plan have been (i) satisfied or (ii) waived pursuant to Section 10.2 of the Plan, and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

45.     **Engie MIPA**.   The Membership Interest Purchase Agreement by and between CEC DB and SoCore MA Development, LLC dated December 27, 2019.

46.     **Entity**. An entity as defined in section 101(15) of the Bankruptcy Code.

47.     **Estate.**   The estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

48.     **Exculpated Party**.   Each of the following, solely in its capacity as such: (a) the Debtors; (b) the DIP Facility Lender; (c) Dev Lender; (d) the Senior Lenders; (e) CEC Entities; (f) CED BTM; and (g) with respect to the foregoing clauses (a) through (f), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former

directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such.

49.    **Executory Contract**.  Any contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.    **Final Decree**. The decree contemplated under Bankruptcy Rule 3022.

51.    **Final Order**. An order or judgment of the Bankruptcy Court or other court of competent jurisdiction which has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or seek review, rehearing, or certiorari has expired (without regard to whether the time to seek relief of a judgment under Rule 60(b) of the Federal Rules of Civil Procedure has expired); and (ii) no appeal or petition for review, rehearing, or certiorari is pending, or if pending as to which no bond or other stay has been issued, or as to which any right to appeal or seek review, rehearing, or certiorari has been waived.

52.    **General Administrative Claim**. Any Administrative Claim other than a Professional Fee Claim.

53.    **General Unsecured Claim**.  Any unsecured claim (other than an Administrative Claim, DIP Facility Claim, a Professional Fee Claim, a Tax Claim, or an Intercompany Claim) against one or more of the Debtors including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party, and (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by a Debtor related thereto.

54.    **Holder**. The owner or holder of any Claim or Interest.

55.    **Impaired**. With respect to any Class of Claims or Interests, a Class of Claims or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

56.    **Intercompany Claim**. Any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

57.    **Intercompany Interest**. An Interest in any Debtor, or a direct or indirect subsidiary of any Debtor; provided that Intercompany Interest shall not include the Acquired Interests.

58.    **Insider**. Any Person defined in section 101(31)(B) of the Bankruptcy Code.

59.     **Interest**. Any membership interests, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in an Entity whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

60.     **Lien**. A lien as defined in section 101(37) of the Bankruptcy Code.

61.     **Liquidating Debtor**. The Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

62.     **MIPA Closing**. The meaning set forth in Section 2.04 of the CED MIPA.

63.     **MIPA Closing Date**. The date on which the MIPA Closing occurs.

64.     **MIPA Sale Proceeds**. The Cash consideration received by the Debtors from the closing of the CED MIPA.

65.     **Person**. The meaning set forth in section 101(41) of the Bankruptcy Code.

66.     **Petition Date**. The date on which each of the Debtors filed its respective petition for relief commencing its Chapter 11 Case.

67.     **Plan**. This joint prepackaged chapter 11 plan, including all appendices, exhibits, schedules and supplements hereto, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Plan Support Agreement.

68.     **Plan Support Agreement**. That certain Plan Support Agreement entered into on June 30, 2020 by and among the Debtors, Dev Lender and the Senior Lenders, and any subsequent Entity that becomes a party thereto pursuant to the terms thereof, attached as <u>Exhibit B</u> to the Disclosure Statement.

69.     **Priority Claim**. A Claim entitled to priority in payment pursuant to section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

70.     **Pro Rata**. The proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class.

71.     **Professional Fee Claim**. All Administrative Claims for the compensation of Retained Professionals and the reimbursement of expenses incurred by such Retained Professionals through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

72.     **Project Companies**.  Altamont NY 1, LLC; Altamont NY 2, LLC; Altamont NY 3, LLC; Bangor ME 1, LLC; Bernardston MA 1, LLC; Blackstone MA 1, LLC; Cairo NY 1, LLC; Carver MA 3, LLC; Charleston NY 1, LLC; Cheshire MA 2, LLC; Ellsworth ME 1, LLC; Etna ME 1, LLC; Etna ME 2, LLC; Fairhaven MA 4, LLC; Franklin ME 1, LLC; Franklin ME 2, LLC; Franklin ME 3, LLC; Freetown MA 2, LLC; Gorham ME 1, LLC; Hampden MA 1, LLC; Harwich MA 1, LLC; Lincoln ME 1, LLC; Lincoln ME 2, LLC; Orange CEC MA 1, LLC; Pittstown NY 1, LLC; Project Acushnet MA 1, LLC; Project Acushnet MA 2, LLC; Project Acushnet MA 3, LLC; Project Greenwich NY 1, LLC; Project Southbridge MA 1, LLC; Seward NY 1, LLC; Sheffield MA 1, LLC; Sparrow Bush NY 1, LLC; Sparrow Bush NY 2, LLC; Swansea MA 1, LLC; Union ME 1, LLC; Union ME 2, LLC; Wareham MA 3, LLC; Warren MA 1, LLC; Williamsburg MA 2, LLC; Yorktown NY 1, LLC; and Yorktown NY 2, LLC.  Subject to CED BTM's right to remove such companies pursuant to Section 2.05(b) of the CED MIPA, "Project Companies" also includes Camp Solar, LLC; Clymer Solar, LLC; Mifflin Solar, LLC; R. Morris Solar, LLC; and Vato Solar, LLC.

73.     **Released Party**.  Each of the following, solely in its capacity as such: (a) the Debtors; (b) the Estates; (c) DIP Facility Lender; (d) Dev Lender; (e) the Senior Lenders; (f) CEC Entities; (g) CED BTM; and (h) with respect to the foregoing clauses (a) through (g), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; *provided* that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a "Released Party."

74.     **Releasing Party**. Each of the following, solely in its capacity as such: (a) the Debtors; (b) the Estates; (c) DIP Facility Lender; (d) Dev Lender; (e) the Senior Lenders; (f) CEC Entities; and (g) with respect to the foregoing clauses (a) through (f), each such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, managed accounts or funds, fund advisors, predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, investment managers, and other professionals, each in their capacity as such; *provided* that any Holder of a Claim or Interest that validly opts out of, or validly objects to, the releases contained in the Plan shall not be a "Releasing Party."

75.     **Retained Professional**. An Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (ii) an order entered by the Bankruptcy Court

authorizing such retention, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

76.     **Secured Claim**. Any Claim secured by a valid and enforceable lien against the property of the Debtor, but only to the extent of the value of the collateral securing such Claim.

77.     **Senior Lenders**. First Solar Distributed Generation, LLC and Black Coral Capital, LLC.

78.     **Solicitation Materials**. The solicitation materials with respect to the Plan.

79.     **Tax Claim**. Any Claim of a governmental unit for taxes entitled to priority under section 507(a)(8) of the Bankruptcy Code.

80.     **Tranche B Lender**. FCS Advisors, LLC d/b/a Brevet Capital Advisors.

81.     **Tranche B Loan**. Loan Agreement dated as of November 13, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Tranche B Loan Agreement"), by and among CEC, the guarantors listed in Schedule I thereto and the Tranche B Lender.

82.     **Unexpired Lease**. A lease of nonresidential real or personal property to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

83.     **Unimpaired**. With respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

84.     **U.S. Trustee**. The Office of the United States Trustee for the District of Colorado.

85.     **Voting Deadline**. The date and time by which the Debtors must actually receive the Ballots, as set forth on the Ballots.

**1.2     <u>Rules of Interpretation</u>**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto;

(e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

## 1.3 Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## 1.4 Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to conflict of laws principles.

## 1.5 Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## 1.6 Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

**2.1**    **Administrative Claims**

### 2.1.1    General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim, which, for the avoidance of doubt, excludes Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, will receive in full and final satisfaction of its General Administrative Claim an amount of Cash from the Claim Escrow Account equal to the amount of such Allowed General Administrative Claim in accordance with the following: (a) if a General Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such General Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such General Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed General Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim without any further action by the Holders of such Allowed General Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors (with the reasonable consent of CED BTM) or Liquidating Debtor, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

### 2.1.2    Professional Fee Claims

**(a)**    **Final Fee Applications and Payment**

All final requests for Professional Fee Claims shall be filed no later than 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Liquidating Debtor from the Claim Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.

**(b)     Payment of Certain Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Debtor shall pay in Cash from the Claim Escrow Account the reasonable legal fees and expenses incurred by the Liquidating Debtor after the Effective Date in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court. If the Debtors or Liquidating Debtor (as applicable) dispute the reasonableness of any such invoice, the Debtors or Liquidating Debtor (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Debtor or Liquidating Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**2.2     DIP Facility Claim**

The DIP Facility Claim shall be Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Facility on such date, (b) all interest accrued and unpaid thereon to the date of payment, and (c) any and all accrued and unpaid fees, expenses and indemnification or other obligations of any kind payable under the DIP Facility Documents.

Except to the extent that the DIP Facility Lender agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed DIP Facility Claim, on the Effective Date, the DIP Facility Lender shall receive a Cash payment in an amount equal to the full of the Allowed DIP Facility Claim from the MIPA Sale Proceeds (and, to the extent required, from the other assets of the Debtors).  The DIP Facility Claim shall be paid prior to any other Claims.

**2.3     Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Liquidating Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

The Debtors do not believe any Priority Tax Claims exist.

**2.4** **Statutory Fees**

All fees due and payable pursuant to section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business (or such amount agreed to with the United States Trustee), for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. On and after the Effective Date, the Liquidating Debtor shall pay any and all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**3.1** **Substantive Consolidation of the Debtor Estates**

Pursuant to Section 5.1 hereof, provided that the DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated, and provided that the DIP Facility Claim has been paid in full, the Plan provides for the consensual substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and Consummation. As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

**3.2** **Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, the DIP Facility Claim, and Priority Tax Claims, as described in Article II.

A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied or disallowed by Final Order prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class:

**Summary of Classification and Treatment of Claims and Interests**

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Dev Lender and Tranche B Lender | Unimpaired | Presumed to Accept |
| 2 | Ameresco, Inc. | Unimpaired | Presumed to Accept |
| 3 | Senior Lenders | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Presumed to Reject |
| 5 | Intercompany Claims | Impaired | Presumed to Reject |
| 6 | Intercompany Interests | Impaired | Presumed to Reject |
| 7 | Equity Interests | Impaired | Presumed to Reject |

## 3.3    Treatment of Classes of Claims and Interests

Except to the extent that the Debtors and a Holder of an Allowed Claim agrees to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(a)    **Class 1 — Dev Lender and Tranche B Lender**

(1)    *Classification*: Class 1 consists of the Allowed Secured Claims of Dev Lender and Tranche B Lender.

(2)    *Treatment*: The Secured Claims of Dev Lender and Tranche B Lender shall have been rolled-up and become part of the DIP Facility Claim and will be treated as set forth above in Section 2.2 with respect to the DIP Facility Claim.  In an abundance of caution, because the claims of Dev Lender and Tranche B Lender are also Secured Claims, they are treated under this Class 1, and to the extent not yet paid, shall receive payment in full in Cash.

(3)    *Voting*: Class 1 is Unimpaired and Dev Lender and Tranche B Lender are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Dev Lender and Tranche B Lender are not entitled to vote to accept or reject the Plan.

**(b)**     **Class 2 — Ameresco, Inc.**

    (1)     *Classification*: Class 2 consists of the Allowed Secured Claim of Ameresco, Inc.

    (2)     *Treatment*: The Allowed Secured Claim of Ameresco, Inc. shall be paid in full prior to the MIPA Closing.

    (3)     *Voting*: Class 2 is Unimpaired and Ameresco, Inc. is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Ameresco, Inc. is not entitled to vote to accept or reject the Plan.

**(c)**     **Class 3 — Senior Lenders**

    (1)     *Classification*: Class 3 consists of the Allowed Secured Claims of the Senior Lenders.

    (2)     *Treatment*: The Senior Lenders' Secured Claims are Allowed and shall have a first priority Lien on the funds in the Claim Escrow Account after repayment of the DIP Facility Claim and the Allowed Class 1 Claims and Class 2 Claim ("Senior Lenders' Lien") that shall be subordinated only to the Liens of Dev Lender and Tranche B Lender with respect to the Claim Escrow Account.  The Senior Lenders' Lien and rights to the Claim Escrow Account funds transferred to CEC after entry of the Final Decree shall be subject to the terms of the loan documents by and between the Senior Lenders and CEC.

    (3)     *Voting*: Class 3 is Impaired.  Therefore, the Senior Lenders are entitled to vote to accept or reject the Plan.

**(d)**     **Class 4 — General Unsecured Claims**

    (1)     *Classification*: Class 4 consists of all General Unsecured Claims.

    (2)     *Treatment*: Holders of Allowed General Unsecured Claims will receive no distribution.

    (3)     *Voting*: Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**(e)**     **Class 5 — Intercompany Claims**

    (1)     *Classification*: Class 5 consists of all Intercompany Claims.

    (2)     *Treatment:* On the Effective Date, each Intercompany Claim shall be cancelled and released without any distribution.

    (3)     *Voting*: Holders of Intercompany Claims are Impaired and such Holders of Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

**(f)**     **Class 6 — Intercompany Interests**

    (1)     *Classification*: Class 6 consists of all Intercompany Interests.

    (2)     *Treatment*: On the Effective Date, Intercompany Interests shall be cancelled and released without any distribution.

    (3)     *Voting*: Holders of Intercompany Interests are Impaired, and such Holders of Intercompany Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

**(g)**     **Class 7 — Equity Interests**

    (1)     *Classification*: Class 7 consists of the Equity Interests in the Debtors.

    (2)     *Treatment*: On the Effective Date, Equity Interests in the Debtors shall be cancelled and released without any distribution.

    (3)     *Voting*: Holders of Equity Interests are Impaired, and such Holders of Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

**3.4**     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**3.5**     **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**3.6**     **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

**3.7**     **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan (subject to the terms of the Plan Support Agreement and CED BTM's consent) to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV

## ASSET SALE TO CED BTM

**4.1**     **Sale of CEC DB Assets to CED BTM**

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the CED MIPA and the sale of the Acquired Interests described therein to CED BTM free and clear of Liens, Claims and other encumbrances pursuant to sections 363(b), 363(f) and 1123(a)(5)(D) of the Bankruptcy Code.  Liens, Claims and other encumbrances shall attach to the CED MIPA Sale Proceeds and be distributed as provided in the Plan.  For the avoidance of doubt, the DIP Facility Claim shall be secured by a first in priority lien on the MIPA Sale Proceeds.

The Confirmation Order shall include findings of fact and conclusions of law that (a) the sale to CED BTM was properly noticed and interested parties received adequate opportunity to object to the sale; (b) the parties to the CED MIPA have full corporate power and authority to execute the CED MIPA and deliver all documents contemplated thereby; (c) the Acquired Interests are property of CEC DB's Estate pursuant to section 541(a) of the Bankruptcy Code; (d) the sale of the Acquired Interests pursuant to the CED MIPA is an appropriate exercise of the Debtors'

business judgment and is in the best interests of the Debtors, the Estates, and creditors; (e) the requirements of section 363(f) have been satisfied because Dev Lender and the DIP Facility Lender consent to the sale; (f) the total consideration to be paid for the Acquired Interests by CED BTM is fair and reasonable and constitutes fair consideration and reasonably equivalent value (as those terms are defined in the Bankruptcy Code and the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 *et seq.*); (g) the terms and conditions of the CED MIPA were negotiated, proposed, and agreed to by CEC DB and CED BTM without collusion, in good faith, and at arm's-length; (h) neither CEC DB nor CED BTM have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the approval of the CED MIPA and CED BTM is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code; (i) CED BTM is not an insider of any of the Debtors; (j) the transfer of the Acquired Interests to CED BTM pursuant to the CED MIPA will be a legal, valid, and effective transfer of the Acquired Interests and will, upon the occurrence of the closing, vest in CED BTM all rights, title, and interest of CEC DB in the Acquired Interests, free and clear of any and all Liens, Claims and other encumbrances in accordance with section 363 of the Bankruptcy Code; and (k) the CED MIPA approved by the Confirmation Order shall not be subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

**4.2**    **No Liabilities Other Than Assumed Liabilities**

CED BTM shall have no liability whatsoever for any obligations of, or claims (including without limitation as defined in section 101(5) of the Bankruptcy Code) against, the Debtors, except with respect to the liabilities expressly assumed in the CED MIPA.

The Debtors shall be deemed to have released and forever discharged CED BTM and any of its successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Acquired Interests or the CED MIPA, except with respect to assumed Liabilities and CED BTM's obligations under the CED MIPA.

**4.3**    **No Successor Liability**

CED BTM shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Interests, to: (1) be a successor (or other such similarly situated party) to CEC DB (other than as expressly stated in the CED MIPA); (2) have, *de facto* or otherwise, merged with or into CEC DB; (3) be a mere continuation of CEC DB or its estate (and there is no continuity of enterprise between CED BTM and CEC DB); or (4) be holding itself out to the public as a continuation of CEC DB. CED BTM is not acquiring or assuming any liability, warranty, or other obligation of CEC DB, except as expressly set forth in the CED MIPA.

**4.4**    **Break-up Fee**

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Break-up Fee of Five Hundred Thousand Dollars ($500,000.00) provided for in the CED MIPA.  CE DB's obligation to pay the Break-up Fee shall constitute an Administrative Claim (which shall be a super priority administrative expense claim junior to the super priority

administrative expense claim with respect to the DIP Facility Claim, but senior to all other administrative expense claims) of Debtors under section 364(c) of the Bankruptcy Code. For the avoidance of doubt, such Break-Up Fee shall be payable only after payment in full of the DIP Facility Claim.

## 4.5    No Interference; Cooperation

Following the MIPA Closing Date, no holder of any Liens, Claims or other encumbrances in any of the Acquired Interests may interfere with CED BTM's use and enjoyment of the Acquired Interests based on or related to such Liens, Claims, or other encumbrances and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated under the CED MIPA.

Each of the Debtors' creditors shall be authorized and directed to, on the MIPA Closing Date, execute such documents and take all other actions as may be necessary, as determined by CEC BTM in its sole discretion, to release their interests against or in the Acquired Interests, if any, as such interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing Liens, Claims, or other encumbrances against or in any of the Acquired Interests shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, or other encumbrances that the person or entity has with respect to any of the Acquired Interests or otherwise, the Debtors shall be authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to any of the Acquired Interests.

## 4.6    Conditions Precedent to Closing

CED BTM shall have no obligation to proceed with the closing of the CED MIPA until and unless all conditions precedent to its obligation to do so, as set forth in the CED MIPA, have been met, satisfied or waived in accordance with the terms of the CED MIPA.

## ARTICLE V

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

## 5.1    Substantive Consolidation

The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and Consummation. If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date provided that the DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated, and provided that the DIP Facility Claim has been paid in full, all assets and liabilities of the Debtors shall be treated as

though they were merged into the Estate of CEC DB for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect any prepetition or postpetition guarantees, liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, any contract, instrument, or other agreement or document pursuant to the Plan, or, in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases. Any alleged defaults under any applicable agreement with the Debtors or their Affiliates arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

Notwithstanding the substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay Quarterly Fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until such time as a particular case is closed, dismissed, or converted.

## 5.2     General Settlement of Claims and Interests

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VII of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

## 5.3     Authority to Effectuate Plan

Upon the entry of the Confirmation Order, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtors' operating agreements such that the provisions of the Plan can be effectuated. The Liquidating Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan and to effectuate the Distributions provided for thereunder.

## 5.4     Vesting of Assets in the Liquidating Debtor

Except as otherwise provided herein and pursuant to the CED MIPA, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, pursuant to sections 1141(b) of the Bankruptcy Code, all property in each Debtor's Estate shall vest in the Liquidating Debtor.

**5.5**     **Corporate Action; Dissolution**

The Plan will be administered by the Liquidating Debtor and all actions taken under the Plan in the name of the Debtors or Liquidating Debtor, as applicable, shall be taken in accordance with the provisions of the Plan. CEC will be the sole authorized representative and signatory of the Liquidating Debtor, with authority to render any and all services necessary to effectuate the terms of the Plan.

Upon the filing by the Liquidating Debtor of a certification with the Bankruptcy Court to the effect that all Distributions required under the Plan have been made (which may be included in the application for the entry of the Final Decree), the Debtors and Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or Liquidating Debtor or payments to be made in connection therewith; provided, however, that the Debtors or Liquidating Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

**5.6**     **Closing of the Chapter 11 Cases**

After all Disputed Claims filed against the Debtors have become Allowed Claims or have been Disallowed, and all Allowed Claims have been paid, the Liquidating Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**5.7**     **Winding Down of Affairs**

Following the Effective Date, the Debtors and Liquidating Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down their affairs. On and after the Effective Date, the Liquidating Debtor may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

**5.8**     **Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording

officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.9     Waiver and Release of Causes of Action**

All Causes of Action are expressly waived, relinquished, exculpated, released, compromised, and settled in the Plan; provided, however, that CED's rights under the CED MIPA shall survive according to their terms notwithstanding anything to the contrary in this Plan.

**5.10     Release of Avoidance Actions**

On the Effective Date, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors, and any Entity acting on behalf of the Debtors, shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to claims asserted against the Debtors.

**ARTICLE VI**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1     Assumption/Assignment/Rejection of Executory Contracts and Unexpired Leases**

A schedule of Executory Contracts and Unexpired Leases to be assumed and/or assumed and assigned is attached hereto as Exhibit B, which schedule may be amended by the Debtors so as to add or delete Executory Contracts or Unexpired Leases to or from said schedule at any time prior to entry of the Confirmation Order; provided, however, that the Debtors may not add or delete Executory Contracts or Unexpired Leases to be assigned to CED BTM to Exhibit B without CED BTM's consent.  Except for Executory Contracts and Unexpired Leases listed on the schedule of Executory Contracts or Unexpired Leases to be assumed and assigned (as such schedule may be amended), each Executory Contract or Unexpired Lease shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume and/or assume and assign filed on or before the Confirmation Date; or (4) is otherwise treated in a manner agreed upon in writing by the Debtors, CED BTM and the counterparty to the Executory Contract or Unexpired Lease.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and assignments and rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Unless otherwise provided herein, each Executory Contract or Unexpired Lease that is assumed and assigned shall (i) include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities,

options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan and (ii) exclude any provisions which purport to prohibit, restrict or condition the assignment of any such Executory Contracts or Unexpired Leases; provided, however, that any provisions which purport to prohibit, restrict or condition the assignment of any such Executory Contracts or Unexpired Leases shall not be enforceable for purposes of the Plan and with respect to any assignment of such Executory Contracts or Unexpired Leases under or pursuant to the terms of the Plan. In addition, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith. Notwithstanding the foregoing, the Debtors shall have the right to terminate, amend, or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

**6.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any Cure Claims shall be satisfied, pursuant to section 365(b)(l) of the Bankruptcy Code, by payment of the amount of the agreed upon Cure Claim in Cash by CED BTM on the CED MIPA Closing Date, with respect to any Executory Contracts or Unexpired Leases assigned to CED BTM in connection with the CED MIPA, or (ii) provided that the DIP Facility Claim has been paid in full, by the Liquidating Debtor on the second Business Day after the later of the Effective Date or the date of assumption or assumption and assignment, for any Executory Contracts or Unexpired Leases not covered in clause (i) above, and otherwise in accordance with any orders entered by the Bankruptcy Court, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing.

In the event of a dispute regarding: (a) the amount of any Cure Claim; (b) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) the ability of CED BTM to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed and assigned, or (d) any other matter pertaining to assumption and/or assumption and assignment, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and/or the assumption and assignment of such Executory Contracts or Unexpired Leases: provided, however, that the Debtors and Liquidating Debtor may settle any dispute  regarding the amount of any Cure Claim or any dispute regarding "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) without any further notice to or action, order, or approval of the Bankruptcy Court.

**6.3    Rejection Damages Claims**

In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their respective properties or interests in property as agents, successors, or assigns, unless the party asserting such damages provides notice of the claims to counsel for the Debtors no later than thirty (30) days after

23

the later of (a) the Effective Date or (b) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of this Plan.

## 6.4    Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

## 6.5    Intercompany Contracts; Contracts and Leases After the Petition Date

Intercompany contracts, and contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor liable thereunder in the ordinary course of its business. Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

## 6.6    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## 6.7    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1**      **Timing and Calculation of Amounts to be Distributed**

Except to the extent an Allowed Claim has been satisfied by the Debtors prior to the Effective Date (pursuant to an order of the Bankruptcy Court, in the ordinary course of business or otherwise), the Holder of an Allowed Claim and the Debtors agree otherwise, or unless otherwise provided in the Plan, Distributions to Holders of Allowed Claims to be made pursuant to the Plan will be so made on or as soon as reasonably practicable after the Effective Date.

To the extent a Claim has not been Allowed prior to or as of the Effective Date, Distributions to such Holders shall be made on or as soon as reasonable practicable after the date on which such Claim becomes Allowed in accordance with the provisions of the Plan.  No Distribution provided under the Plan will be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim as set forth in Article VIII hereof.

In the event that any Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Distributions made after the Effective Date shall be deemed to have been made on the Effective Date. Except as otherwise expressly provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

**7.2**      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**7.2.1     Delivery of Distributions in General**

Except as otherwise provided herein, the Liquidating Debtor shall make Distributions from the Claim Escrow Account to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Liquidating Debtor.

**7.2.2     Minimum Distributions**

The Liquidating Debtor shall not be required to make payments of less than $500 (whether Cash or otherwise) and shall not be required to make payments of fractions of dollars and such fractions of dollars shall be deemed to be zero.

**7.2.3     Undeliverable Distributions and Unclaimed Property**

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Debtor has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder

25

without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in such property shall be discharged and forever barred.

Checks issued by the Liquidating Debtor on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Liquidating Debtor by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Debtors to attempt to locate any Holder of an Allowed Claim.

## 7.3    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtors and Liquidating Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors and the Liquidating Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

## 8.1    Prosecution of Objections to Claims

The Debtors and Liquidating Debtor, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. From and after the Effective Date, the Liquidating Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Liquidating Debtor also reserves the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

**8.2**     **No Filing of Proofs of Claim**

Holders of Claims and Interests shall not be required to (*and should not)* file proofs of claim with the Bankruptcy Court, the Debtors or any of the Debtors' advisors or agents.  On and subsequent to the Effective Date, except as otherwise provided herein, all Claims entitled to a distribution under the Plan will be paid in the ordinary course of business in accordance with the Debtors' books and records (as set forth in the Debtors' schedules and statements filed with Bankruptcy Court or any supplements or amendments thereto), which amounts, unless disputed, shall constitute the Allowed amount of such Claims.

**8.3**     **Procedures Regarding Disputed Claims**

The Debtors intend to make distributions required under the Plan in accordance with their books and records.  Unless disputed by a Holder of a Claim, the amount set forth in the books and records of the Debtors shall constitute the amount of the Allowed Claim of such Holder. If any such Holder of a Claim disagrees with the Debtors' books and records with respect to the Allowed amount of such Holder's Claim, such Holder must so advise the Debtors in writing not later than three (3) days prior to the Confirmation Date, in which event the Claim will become a Disputed Claim.  If the Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced. While the Debtors intend to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court, the Debtors may elect, in their sole discretion, to file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto, and litigate such objections to Final Order.

**8.4**     **Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled, without any interest to be paid on account of such Claim.


**ARTICLE IX**

**EFFECT OF CONFIRMATION OF THE PLAN**

**9.1**     **Compromise and Settlement of Claims, Interests, and Controversies**

**Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect**

27

to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**9.2**   **Releases by the Debtors**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT THE DEBTORS OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER  RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE LIQUIDATION AND IMPLEMENTING THE PLAN; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (C) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO ANY OF THE DEBTORS OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**9.3**     **Releases by Holders of Claim and Interests**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EACH RELEASING PARTY IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH DEBTOR AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY

OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POSTEFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN INCLUDING WITHOUT LIMITATION THE CED MIPA.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE PROVIDED FOR HEREIN, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING AND IMPLEMENTING THE PLAN; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE.

### 9.4 Exculpation

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE DIP FACILITY, THE DISCLOSURE STATEMENT, THE PLAN, OR ANY LIQUIDATION TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DIP FACILITY, THE DISCLOSURE STATEMENT, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED

AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES ON, AND DISTRIBUTION OF CONSIDERATION PURSUANT TO, THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT RELEASE OR EXCULPATE ANY CLAIM RELATING TO ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY LIQUIDATION TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

## 9.5    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (B) HAVE BEEN RELEASED PURSUANT TO SECTION 9.2 OF THIS PLAN; (C) HAVE BEEN RELEASED PURSUANT TO SECTION 9.3 OF THIS PLAN, (D) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.4 OF THIS PLAN, OR (E) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON

**ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS DISCHARGED, RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.**

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**10.1**    **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 10.2 of the Plan:

10.1.1    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

10.1.2    The Bankruptcy Court shall have entered the Confirmation Order, which shall:

(1)    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

(2)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(3)    approve the CED MIPA;

(4)    authorize the Debtors or Liquidating Debtor, as applicable or necessary, to: (a) make all distributions and issuances as required under the Plan and (b) enter into any agreements, transactions, and sales of property;

(5)        authorize the implementation of the Plan in accordance with its terms; and

(6)        provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

10.1.3        All governmental and material third party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

10.1.4        The DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated.

10.1.5        The Debtors shall not be in default under the DIP Facility or the DIP Orders (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Facility and the DIP Orders).

10.1.6        The CED MIPA shall have been executed and delivered by all of the entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the Closing under the CED MIPA shall have been waived or satisfied in accordance with the terms thereof, and the closing of the CED MIPA shall be deemed to occur concurrently with the occurrence of the Effective Date.

10.1.7        The Plan Support Agreement shall not have terminated as to all parties thereto and shall remain in full force and effect and the parties thereto shall be in compliance therewith.

10.1.8        All professional fees and expenses of Retained Professionals approved by the Bankruptcy Court shall have been paid in full.

10.1.9        With respect to all actions, documents and agreements necessary to implement the Plan: (a) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (b) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable governmental units in accordance with applicable laws; and (c) such documents and agreements shall have been effected or executed.

       10.1.10      All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

## 10.2    Waiver of Conditions Precedent

The Debtors (with the prior consent of the DIP Facility Lender, the Senior Lenders, and CED BTM) may waive any of the conditions to the Effective Date set forth in Section 10.1 of the Plan (except for the condition to the Effective Date set forth in Section 10.1.2) at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

## 10.3    Effect of Non-Occurrence of Conditions to Consummation

If the Effective Date does not occur on or before the termination of the Plan Support Agreement or the drop dead date provided in the CED MIPA, or if, prior to the Effective Date, the Confirmation Order is vacated pursuant to a Final Order, then (except as provided in any such Final Order): (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, the Confirmation Order, the Disclosure Statement or the Plan Support Agreement shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## 10.4    Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## 11.1    Modification of Plan

Effective as of the date hereof: (a) the Debtors reserve the right (subject to the terms of the Plan Support Agreement, the consents required therein, and the CED MIPA) in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors (subject to the terms of the Plan Support Agreement, the consents required therein, and the CED MIPA) may, upon order of the Bankruptcy Court, amend or modify

the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein. Notwithstanding anything to the contrary herein, the Debtors shall not amend or modify the Plan in a manner inconsistent with the Plan Support Agreement or the CED MIPA.

## 11.2   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## 11.3   Revocation or Withdrawal of Plan

The Debtors reserve the right (subject to the terms of the Plan Support Agreement, the consents required therein, and the CED MIPA) to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) the Plan Support Agreement and the CED MIPA will be null and void in all respects; (c) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (d) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against a Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Section 7.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

36

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court; and

16.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1     Immediate Binding Effect

Subject to Section 10.1 hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### 13.2     Additional Documents

On or before the Effective Date, the Debtors (subject to any consent rights set forth in the Plan Support Agreement or the Plan) may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.3     Reservation of Rights

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**13.4    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**13.5    Service of Documents**

All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> WADSWORTH GARBER WARNER CONRARDY, P.C.
> David V. Wadsworth
> 2580 West Main Street, Suite 200
> Littleton, CO 80120
> Telephone: (303) 296-1999
> Facsimile: (303) 296-7600
> Email: dwadsworth@wgwc-law.com

In accordance with Bankruptcy Rules 2002 and 3020(c), within fourteen (14) calendar days of the date of entry of the Confirmation Order, the Debtor shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**13.6    Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

13.7 **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.8 **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' prior consent, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

13.9 **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of the parties to the Plan Support Agreement and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals or the Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

13.10 **Dissolution of the Committee**

In the event a statutory committee of the Debtors' unsecured creditors is appointed by the U.S. Trustee, such official committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided* that such official committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Retained Professionals pursuant to sections 330 and 331 of the Bankruptcy Code.

**13.11   Closing of Chapter 11 Cases**

The Debtor shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**13.12   Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Plan Support Agreement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

DATED: July 2, 2020.

CEC DEVELOPMENT BORROWER, LLC

By: _____
Name: Thomas Sweeney
Its: President

CEC RENEWABLE ASSETS, LLC

By: _____
Name: Thomas Sweeney
Its: President

CEC RENEWABLE ASSETS DEVELOPMENT, LLC

By: _____
Name: Thomas Sweeney
Its: President

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ David V. Wadsworth*

_____
David V. Wadsworth, #32066
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, CO 80120
(303) 296-1999, Fax: (303) 296-7600
ATTORNEYS FOR DEBTORS

**EXHIBITS**

Exhibit A –Membership Interest Purchase Agreement by and between CEC DB and CED BTM dated July 1, 2020

Exhibit B – Schedule of Assumed/Assumed and Assigned Executory Contracts